UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| ANTONION D. JONES, | ) |
| Petitioner, | ) ) ) |
| vs. | ) Case No. 1:22-CV-00082-ACL ) |
| BILL STANGE, | ) ) |
| Respondent. | ) ) |

**MEMORANDUM AND ORDER**

This matter is before the Court on the Petition of Antonion Jones for a Writ of Habeas Corpus under 28 U.S.C. § 2254.

**I. Procedural History**

Jones is currently incarcerated at Southeast Correctional Center in Charleston, Missouri, pursuant to the Sentence and Judgment of the Circuit Court of the City of St. Louis, Missouri. (Doc. 10 at 1.)

The State charged Jones with one count of stalking in the first degree and one count of harassment in the first degree. (Doc. 10-1 at 7.) On October 4, 2018, a trial court found Jones guilty of the harassment charge and not guilty of the stalking charge. *Id.* at 60. The court sentenced Jones to consecutive terms of five-years' imprisonment for the harassment in the first degree and fifteen-years' imprisonment for a violation of Jones' probation. *Id.* at 60-61.

Jones raised one point on direct appeal of his conviction. (Doc. 10-3 at 12.) In his point, Jones argued that the trial court erred in finding him guilty of the harassment in the first degree because, when viewing the evidence "in the light most favorable to the State," the State "failed to prove beyond a reasonable doubt that the purpose of Appellant Jones' actions were [sic] to cause

emotional distress to another person and his actions did not [sic] cause emotional distress." *Id.* at 12. The Missouri Court of Appeals denied Jones' point on appeal and found that the trial court could have reasonably found that Jones intentionally caused the Victim emotional distress, and the Victim did, in fact, suffer emotional distress. (Doc. 10-5 at 6.)

On July 20, 2020, Jones filed a *pro se* motion for post-conviction relief under Rule 29.15. (Doc 10-6 at 8.) Upon Jones being appointed counsel, said counsel "did not enter his appearance until . . . [after] the deadline for timely filing the amended motion." *Id.* at 9. Once appointed counsel filed both an amended motion and another motion "for the Court to consider the amended motion as timely," the Court "found that abandonment had occurred" and allowed the amended motion to be accepted as timely. *Id.* In the amended motion, Jones claimed "his trial counsel was ineffective for failing to investigate and present evidence of the letter that Mr. Jones wrote to Ms. Dilworth at the time of the offense. *Id.* On April 19, 2021, the motion court denied Jones' amended motion without an evidentiary hearing. *Id.*

Jones raised the same claim on appeal from the denial of post-conviction relief that he raised in his amended post-conviction motion and asked the court to reverse the motion court's denial and remand for a new trial or remand for an evidentiary hearing. *Id.* at 10. The Missouri Court of Appeals affirmed the decision of the motion court. (Doc. 10-8 at 1.)

Jones filed a Petition for a Writ of Mandamus on April 12, 2022, claiming the trial court committed a reversible error by allowing Jones to be convicted by false testimony and a lack of evidence to support the alleged false testimony. (Doc. 1-3 at 6.) Jones then filed a petition in the instant habeas action on June 8, 2022, raising the following ground for relief: the evidence was insufficient to support his conviction of harassment in the first degree and said conviction violated his First Amendment Freedom of Speech. (Doc. 1 at 5.)

On August 10, 2022, Respondent filed a Response to Order to Show Cause, in which he argued that Jones' writ of habeas corpus should be denied because Jones' claim is procedurally defaulted and, alternatively, the Court should deny it in deference to the Missouri Court of Appeals. (Doc. 10 at 14.)

## II.  Facts

The Court's summary of the facts below is taken from the decision of the Missouri Court of Appeals on direct appeal:

> Victim and [Jones] share a child together, who was seven years old at the time of the trial. As of the time of the trial, Victim had not been in a relationship with [Jones] for almost seven years, and [Jones] had not had any contact with the child in about five years.
>
> On three successive days between April 23 and April 25 of 2018, [Jones] encountered Victim four times while she was working at her place of employment, a Boost Mobile store ("the Store"). First, at about 2:30 pm on April 23, [Jones] came into the Store and told Victim he was trying to see their child. Victim repeatedly told [Jones] to leave and eventually pressed a panic button which called the police, because "[Jones] had a history of [] putting his hands on [her] every time [sic]." During the first encounter, [Jones] called her a "bitch." [Jones] left the Store after the police were called, but came back that same day at 4:00 p.m. During this second encounter, [Jones] cursed at Victim again, calling her a ["]bitch[]" and a "ho[]." [Jones] also threatened to drag Victim out of the Store and pull her hair out. In addition, [Jones] told Victim, "I kill you. I should have killed you when I had the chance to." [Jones] then left the Store.
>
> The next morning, April 24, 2018, [Jones] came back to the Store with some of his friends. [Jones] again cursed at Victim, calling her a "bitch" and a "ho[]." When Victim told [Jones] to leave and said she would call the police, [Jones] told her, "B[itch], I kill you, I kill you." During the incident, one of [Jones'] friends had a gun under his jacket and he started to "grab for the weapon" until a customer was able to get [Jones] and his friend out of the Store. [Jones] left the area for a period of time but later came back and was seen sitting at a nearby gas station watching the Store.
>
> The final encounter between [Jones] and Victim occurred the next day, on April 25, when [Jones] came back to the Store with his friend. [Jones] again called the Victim a "bitch[]" and a "ho[]," and [Jones] repeatedly told Victim he was going to come to her house and kill her. Victim testified she believed [Jones] was making credible threats to kill her and thought he was going to kill her because [Jones] showed

Victim a tattoo on his wrist that said "RIP [Victim's first name]," and because [Jones] then said those words to her ("RIP [Victim's first name]"). Subsequently, Victim called the police and officers arrested [Jones] in front of the Store.

(Doc. 10-5 at 4-6.)

### III.  Standard of Review

A federal court's power to grant a writ of habeas corpus is governed by 28 U.S.C. § 2254(d), which provides:

> (d)  An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim--
>
> > (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> >
> > (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

The Supreme Court construed § 2254(d) in *Williams v. Taylor*, 529 U.S. 362 (2000). With respect to the "contrary to" language, a majority of the Court held that a state court decision is contrary to clearly established federal law "if the state court arrives at a conclusion opposite to that reached by [the Supreme Court] on a question of law" or if the state court "decides a case differently than [the] Court has on a set of materially indistinguishable facts." *Id.* at 405. Under the "unreasonable application" prong of § 2254(d)(1), a writ may issue if "the state court identifies the correct governing legal rule from [the Supreme Court's] cases but unreasonably applies [the principle] to the facts of the particular state prisoner's case." *Id.* Thus, "a federal habeas court making the 'unreasonable application' inquiry should ask whether the state court's application of clearly established federal law was objectively unreasonable." *Id.* at 410. Although the Court failed

to specifically define "objectively unreasonable," it observed that "an unreasonable application of federal law is different from an incorrect application of federal law." *Id.* at 410.

### IV.  Procedural Default

Respondent contends that Jones' sufficiency of the evidence claim appears to be preserved for federal habeas review. However, to the extent he raises a constitutional claim under the First Amendment, such a claim is procedurally defaulted. (Doc. 10 at 9.)

To avoid defaulting on a claim, a petitioner seeking federal habeas review must have fairly presented the substance of the claim to the state courts, thereby affording the state courts a fair opportunity to apply controlling legal principles to the facts bearing on the claim. *Wemark v. Iowa*, 322 F.3d 1018, 1020-21 (8th Cir. 2003) (internal quotation marks and citations omitted) (quoting *Anderson v. Harless*, 459 U.S. 4, 6 (1982) (per curiam) and *Anderson v. Groose*, 106 F.3d 242, 245 (8th Cir. 1997)). Specifically, a state prisoner must fairly present each of his claims in each appropriate state court before seeking federal habeas review of the claim. *Baldwin v. Reese*, 541 U.S. 27, 29 (2004). A claim has been fairly presented when a petitioner has properly raised the same factual grounds and legal theories in the state courts that he is attempting to raise in his federal petition. *Wemark*, 322 F.3d at 1021 (internal quotation marks omitted) (quoting *Joubert v. Hopkins*, 75 F.3d 1232, 1240 (8th Cir. 1996)). Claims that are not fairly presented to the state courts are procedurally defaulted. *See id.* at 1022.

Absent a showing of cause and prejudice or a miscarriage of justice, a federal habeas court may not reach the merits of a federal constitutional claim procedurally defaulted due to a petitioner's failure to follow applicable state rules in raising the claim in state court. *Sawyer v. Whitley*, 505 U.S. 333, 338-39 (1992). "Cause for a procedural default exists where 'something *external* to the petitioner, something that cannot fairly be attributed to him[,]…' impeded [his]

efforts to comply with the State's procedural rule." *Maples v. Thomas*, 565 U.S. 266, 280 (2012) (alternations in original) (quoting *Coleman v. Thompson*, 501 U.S. 722, 753 (1991).

Jones did not raise a First Amendment claim during state direct appeal proceedings. (Doc. 10-3 at 12.) Rather, he raised a claim of insufficient evidence, arguing the State failed to prove Jones intentionally caused emotional distress to Victim or that Victim in fact suffered emotional distress. *Id.*

Jones has failed to allege cause to excuse his procedural default. Thus, Jones' First Amendment claim is procedurally defaulted.

### V.  Jones' Sufficiency of the Evidence Claim

Next, is Jones' sufficiency of the evidence claim raised before the State court. For the reasons discussed below, Jones' claim fails on its merits.

Jones argues that the evidence was insufficient to support his conviction of first-degree harassment because there was no evidence of intent to cause emotional distress or that Victim actually suffered emotional distress. Jones states that the allegations made by Victim, including that she called the police, experienced emotional distress, and that an ex parte order existed ordering Jones not to be near Victim, were false. (Doc. 1 at 5.) Jones argues there is no proof that Victim experienced emotional distress. *Id.* Jones raised this claim in his direct appeal. (Doc. 10-3 at 17.) The Missouri Court of Appeals held as follows:

> Pursuant to our standard of review, which requires us to view all evidence and reasonable inferences therefrom in the light most favorable to the court's verdict, the court as the trier of fact could have reasonably found from the aforementioned evidence that, (1) it was [Jones'] conscious object to engage in conduct and cause Victim "something markedly greater than the level of uneasiness, nervousness, unhappiness, or the like which are commonly experienced in day-to-day living," i.e., emotional distress; and (2) [Jones] caused Victim to suffer such emotional distress. *See Twitty*, 506 S.W.3d at 346; section 565.090.1; 562.016.2; *Kinsella*, 578 S.W.3d at 814-15; section 565.002(7); *see also State v. Baker*, 40 S.W.3d 392, 395-96 (Mo. App. W.D. 2001) (finding there was sufficient evidence the defendant's

> conduct caused the victim to suffer substantial emotional distress when, similar to here and *inter alia*, the victim felt like her life was in danger); *State v. Martin*, 940 S.W.2d 6, 9 (Mo. App. W.D. 1997) (finding there was sufficient evidence the victim suffered substantial emotional distress from the defendant's acts when, similar to here and *inter alia*, the defendant repeatedly threatened to kill the victim, the defendant used obscenities towards the victim, and the victim knew the defendant had a propensity for violence). In other words, the trial court could have reasonably found [Jones] acted with the purpose to cause emotional distress to Victim and that [Jones] caused Victim to suffer emotional distress. *See id.*

(Doc. 10-5 at 6.)

A federal court's review of a sufficiency of the evidence claim "is limited to determining 'whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" *Gibbs v. Kemna,* 192 F.3d 1173, 1175 (8th Cir. 1999) (quoting *Jackson v. Virginia,* 443 U.S. 307, 319 (1979)) (emphasis in original). "In applying this standard, '[t]he scope of our review . . . is extremely limited…We must presume that the trier of fact resolved all conflicting inferences in the record in favor of the state, and we must defer to that resolution.'" *Sexton v. Kemna*, 278 F.3d 808, 814 (8th Cir. 2002) (quoting *Miller v. Leapley*, 34 F.3d 582, 585 (8th Cir. 1994)).

Section 565.090 of the Missouri Revised Statutes provides that "[a] person commits the offense of harassment in the first degree if he or she, without good cause, engages in any act with the purpose to cause emotional distress to another person, and such act does cause such person to suffer emotional distress." Mo. Ann. Stat. § 565.090 (West). "A person 'acts purposely', or with purpose, with respect to his or her conduct or to a result thereof when it is his or her conscious object to engage in that conduct or to cause that result." Mo. Ann. Stat. § 562.016 (West). This mental state "is most often inferred circumstantially." *State v. Perkins*, 640 S.W.3d 498, 502 (Mo. Ct. App. 2022) (citing *State v. Lammers*, 479 S.W.3d 624, 633 (Mo. banc 2016)). "[I]ntent may be based upon circumstantial evidence or inferred from surrounding facts, such as evidence

of defendant's conduct before the act, from the act itself, and from the defendant's subsequent conduct." *Id.* (citing *State v. Herrington*, 315 S.W.3d 424, 426 (Mo. App. S.D. 2010)).

Victim testified that Jones had not seen their child for almost five years, Jones visited Victim four times over the course of three days at her place of employment, Victim warned Jones to leave several times, Jones called Victim many expletives and threatened to kill Victim, Jones' friend attempted to pull a gun out of his jacket, and Jones showed Victim a tattoo that said "RIP [Victim's name]." (Doc. 10-5 at 5-6.) Under *Jackson,* after viewing the evidence in the light most favorable to the State, any rational juror could have found that Jones purposely attempted to cause emotional distress to Victim and did, in fact, cause that emotional distress. The determination of the State court was not contrary to, nor did it involve an unreasonable application of, clearly established federal law. Further, the State court's decision was not unreasonable in light of the evidence presented during trial. Thus, Jones' Petition will be denied.

## VI.  Certificate of Appealability

To grant a certificate of appealability, a federal habeas court must find a substantial showing of the denial of a federal constitutional right. *See* 28 U.S.C. § 2253(c)(2); *Hunter v. Bowersox*, 172 F.3d 1016, 1020 (8th Cir. 1999). A substantial showing is established if the issues are debatable among reasonable jurists, a court could resolve the issues differently, or the issues deserve further proceedings. *See Cox v. Norris*, 133 F.3d 565, 569 (8th Cir. 1997). In this case, Jones has failed to make a substantial showing of the denial of a constitutional right. The undersigned is not persuaded that the issues raised in his Petition are debatable among reasonable jurists, that a court could resolve the issues differently, or that the issues deserve further proceedings.

Accordingly, no Certificate of Appealability shall be issued.

## ORDER

**IT IS HEREBY ORDERED, ADJUDGED and DECREED** that the instant Petition for a Writ of Habeas Corpus under 28 U.S.C. § 2254 be denied and be dismissed with prejudice by separate judgment entered this date.

**IT IS FURTHER ORDERED, ADJUDGED and DECREED** that Petitioner be denied a Certificate of Appealability if Petitioner seeks to appeal this Judgment of Dismissal.

Dated this 8th day of February, 2024

                                           s/*Abbie Crites-Leoni*
                                           ABBIE CRITES-LEONI
                                           UNITED STATES MAGISTRATE JUDGE